## Rufus Jameson *vs.* Henry A. Head.

Where the interest in a bond for the conveyance of real estate to a debtor is seised and sold on execution, agreeably to the provisions of the *stat.* of 1829, c. 431, the lien of the creditor becomes fixed by the seisure on the execution, and is not dissolved by a voluntary surrender of the bond to the obligor by the obligee or his agent, without consideration.

A bill in equity may be maintained, under that statute, by the purchaser of such right without making any tender, or offer of payment, if the obligor in the bond, on request made by the purchaser, before the expiration of the time for payment or performance, shall refuse to give true and correct information of the amount due, or condition remaining unperformed.

And it is not a sufficient excuse for withholding this information, that the purchaser had heard it from others.

This was a bill in equity, claiming the right to have a conveyance of certain land on payment of the amount due to the defendant therefor, or to recover damages, if the defendant had incapacitated himself from conveying by a prior conveyance to others without notice. The bill alleged, that one *Norton* had contracted for the land with the defendant, and had received a bond conditioned to convey the same on payment of a certain sum ; that he had become possessed of *Norton's* right under a sheriff's sale thereof, according to the provisions of the statute ; and that he had requested the defendant to disclose the terms of the contract, and the amount due from *Norton* to *Head,* and a refusal to do either.

The hearing was on bill, answer and proof. The substance thereof will be found in the opinion of the Court.

*W. P. Fessenden,* for the plaintiff, said that the bill was brought on the *stat.* of 1829, the "additional act respecting the attachment of property," c. 431 ; and stated the substance of the bill, answer and proof. He contended, that it appeared clearly, that *Norton* was entitled to have a conveyance at the time of the sale ; and said, that the attempt by the defendant to avoid performance

from a pretended giving up of the bond by the wife of *Norton* to the defendant could not avail him; that the wife had no authority from the husband to give up the bond. If the wife sell or dispose of the husband's property without his assent, such sale is void. 2 *Com. Dig., Day's ed.* 224 ; 8 *Vesey,* 599. If she could not sell it, much less could she give it away. But there is no sufficient evidence, that the bond was given up until after the sale.

The statute, § 2, expressly provides, that the bill may be supported without a tender, when the obligor shall refuse to give true and correct information of the amount due on the bond. No particular form of words is necessary in making the demand, and in this case it was sufficient ; and his refusal to disclose dispenses with the necessity of making a tender. 2 *Pick.* 540 ; 4 *Pick.* 6.

*Rogers,* for defendant, contended, that the evidence shew, that the bond was given up and cancelled before the seisure of the right of *Norton* on the execution. As between third persons, the assent of the husband to the acts of the wife is to be implied, when he leaves her to transact the business of the family, and manage the concerns of the husband. Very slight circumstances, far more weak than are proved here, are sufficient evidence of the assent of the husband to the acts of the wife. 2 *Stark. Rep.* 368 ; *Hill* v. *Hatch,* 2 *Fairf.* 450 ; 2 *Stark. Ev.* 54 to 58. He argued, that on this account nothing passed by the sale ; that the defendant was justly to be considered as a purchaser of the interest of *Norton* in the bond, and even if the purchase was not made until after the seisure on execution, that still a Court of equity will not interfere, or lend its aid under the circumstances of this case. He also contended, that here was no such demand, as would enable the plaintiff to maintain a bill without tendering the amount due. He cited 6 *Johns. Ch. R.* 111 ; *ibid,* 222 ; 1 *Johns. Ch. R.* 273 ; *ibid,* 370 ; 2 *Johns. Ch. R.* 1 ; 4 *Mason,* 331

The case was continued for advisement, and the opinion of the Court afterwards drawn up by

WESTON C. J. — By the act additional, respecting the attachment of property, *statute* of 1829, *ch.* 431, such an interest as *Norton,* the debtor of *Hatch,* had in the land in controversy, was liable to be seised on execution. It was so seised on the seven-

teenth of *April*, 1833. That *Norton* had from the defendant a bond conditioned to convey the land, upon payment of a sum of money therein expressed, by a day then future, is a fact charged in the bill, and admitted in the answer. Had it been given up, prior to the seisure of the interest on execution? The bill calls upon the defendant to disclose how and where, he obtained the possession of the bond. He answers, that he was in possession of it on the first of *July*, 1833, and that it had been delivered to him before that day; but he fixes no earlier period affirmatively and positively. There is nothing in the answer, inconsistent with the conclusion, that it may have been delivered to him the day next preceding.

The deputy-sheriff, *Leavitt*, deposes, that about a week after he advertised the interest he had seised, which was done on the eighteenth day of *April*, the defendant told him *Mrs. Norton* had given him up the bond; but he does not in his answer confirm his declaration, that he had it at that time; although specially and properly interrogated as to the time, and although it was his duty to make a full disclosure upon this point. If he had the bond in his possession at and prior to the sale, it is not easy to conceive, that such a fact would have escaped his memory; but he does not say that he had it at that time. Taking the answer and the proof together, it cannot be regarded as an established point, that he had the bond before the sale. But assuming that he received it, as *Leavitt* is impressed he did, the day after the interest was advertised, which would be the nineteenth of *April*, that was two days after the seisure on execution. The defendant does not affirm in his answer, that he had no notice of that fact, when he received the bond, if indeed that would make any difference in the rights of the creditor or of the purchaser. But there is reason to believe, as well from the inquiries, previously put to him by the officer, and the publicity of the advertisement, as from the silence of the answer, that he had notice. The lien of the creditor was fixed by the seisure; and no transactions between the defendant and *Norton*, or any agent of his, could dissolve it. The voluntary surrender of the bond, subsequently made by *Mrs. Norton*, without consideration, certainly could not have this effect.

On the first of *July* then, *Harvey Jameson* was, by operation of law, the assignee of the interest, which *Norton* had on the seven-

Jameson *v.* Head.

teenth of *April;* and on the same first of *July,* he had a right to pay the consideration to the defendant, and to demand and receive a deed.   To guard the interest of the purchaser, the second section of the statute before cited provides, that whenever the obligor or contractor, upon request of the purchaser, shall neglect or refuse to give true and correct information of the amount due, or of the conditions remaining unperformed, the purchaser may maintain a bill in equity, without tendering payment of the sum due, or offering to perform any other conditions.   The bill charges, that on the first of *July* such information was requested by the purchaser, which the defendant neglected and refused to give.   This is denied by the answer.

It appears from the testimony of *Thomas F. Hatch,* that he and *Jameson* did on that day call upon the defendant for the express purpose of obtaining such information, which he, although then possessed of the bond, evaded and withheld.   *Hatch* deposes, that he was desirous of purchasing it, if it promised to be advantageous. *Jameson* had a right to the information for himself, and with a view to make the sale to *Hatch.*   It was from his testimony, a most manifest evasion to defeat the purchaser ; for a day or two after, when the time within which he had a right to pay had elapsed, the defendant voluntarily submitted the bond to the inspection of the witness, for the avowed purpose of apprizing him, that the right was gone.

*Rufus Dwinal* confirms *Hatch.*   He was present at the same conversation, from which he understood, as he deposes, that the object of *Hatch* and *Jameson* was to ascertain the conditions of a certain bond ; and especially the amount they had to pay.   He says, the defendant avoided giving any definite information, and that to the best of his recollection, they did not succeed in getting any. He thinks the defendant would not acknowledge the existence of any bond ; but said if *Hatch* had any money, he might offer it.

*Nehemiah O. Pilsbury,* a witness for the defendant, heard part of the conversation.   *Hatch* wanted to know if the defendant would give up the bond, if he would pay the money due on it ; and the witness deposes, that the defendant told him to bring the money, and he would let him know.   But the purchaser had a right to the information, before he produced the money.   Upon the

whole, notwithstanding the answer, the proof is satisfactory to the Court, that the information, which the purchaser had a right to claim by the statute, was sought by him, and withheld by the defendant. Nor do we think that it was any excuse for him, that the purchaser may have heard before what the conditions were.   He had a right to be assured himself upon this point, and to be able to satisfy *Hatch*, with whom he was negotiating for the sale of his interest. There is reason to believe that *Hatch* would have made the purchase, if he had ascertained the terms and had found the defendant willing to fulfil the conditions of the bond on his part.

The rights of the purchaser and plaintiff, his assignee, being preserved by the neglect and refusal of the defendant to give the information requested, the plaintiff has a right, upon payment of the sum stipulated in the bond, to a conveyance of the land, or relief equivalent thereto in damages.